JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 17-9158-GW(SKx) | | Date | May 3, 2018 |
|---|---|---|---|---|
| Title | *Church of Scientology International v. Laura DeCrescenzo* | | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS - FINAL RULINGS ON: (1) DEFENDANT'S MOTION TO DISMISS [13] AND (2) PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [18]

    Attached hereto is the Court's Final Rulings on: (1) Defendant's Motion to Dismiss and (2) Plaintiff's Motion for Summary Judgment. The Court GRANTS Defendant's motion to dismiss WITH PREJUDICE and DENIES Plaintiff's motion for summary judgment as moot.

: 

Initials of Preparer    JG

*<u>Church of Scientology Int'l. v. DeCrescenzo</u>*, Case No. 2:17-cv-09158-GW-(SKx)
Final Rulings on: (1) Defendant's Motion to Dismiss and (2) Plaintiff's Motion for Summary Judgment

## I.  Background

### A.  Procedural Background

Plaintiff Church of Scientology International ("CSI" or "Plaintiff") sues Laura Ann DeCrescenzo ("DeCrescenzo" or "Defendant") for declaratory and injunctive relief to enjoin Defendant from prosecuting her lawsuit against CSI, currently pending in California Superior Court.  *See generally* Complaint ("Compl.") ¶ 1, Docket No. 1.

There are two motions before the Court.  The first is Defendant DeCrescenzo's motion to dismiss the Complaint.  *See* Defendant DeCrescenzo's Memorandum of Points and Authorities in Support of Motion to Dismiss ("MTD"), Docket No. 13-1.  In support of the MTD, Defendant filed a request for judicial notice.  *See* Request for Judicial Notice in Support of Defendant's Motion to Dismiss ("Def.'s RJN"), Docket No. 13-2.[1]  Plaintiff CSI filed its opposition to the MTD.  *See* Plaintiff CSI's Memorandum in Opposition to Defendant's Motion to Dismiss ("MTD Opp."), Docket No. 25.  In support of Plaintiff's opposition to the MTD, Plaintiff filed its own request for judicial notice.[2]  *See* Request for Judicial Notice in Support of Opposition to Motion to Dismiss ("Pl.'s RJN"), Docket No. 25-1, 25-2.  Defendant DeCrescenzo filed a reply to the motion to dismiss.  *See* Reply in Support of MTD ("MTD Reply"), Docket No. 27.

The second motion is Plaintiff CSI's motion for summary judgment.  *See* Plaintiff's Notice of Motion and Motion for Summary Judgment ("MSJ"), Docket No. 18.  Plaintiff filed the same documents in support of the MSJ as it did in support of the MTD.  *See* Declaration of Bert H. Deixler in Support of Plaintiff's MSJ, Docket Nos. 21-3, 21-4.  Defendant DeCrescenzo filed her opposition to the MSJ.  *See* Memorandum of Points and Authorities in Opposition to

---

[1] Defendant included 31 exhibits in her RJN.  *See generally* Def.'s RJN.  These exhibits predominantly include orders issued by this Court and California state courts and documents filed with the courts.  Pursuant to Rule 201 of the Federal Rules of Evidence, all of the exhibits are either appropriate for judicial notice or proper to consider as part of a motion to dismiss.  *See Lyon v. Gila River Indian Cmty*, 626 F.3d 1059, 1075 (9th Cir. 2010).

[2] Plaintiff included 18 exhibits in its RJN.  *See generally* Pl.'s RJN.  Similarly to Defendant's RJN, these exhibits mainly include orders issued by California state courts and documents filed with the courts.   Pursuant to Rule 201 of the Federal Rules of Evidence, all of the exhibits are either appropriate for judicial notice or proper to consider as part of a motion to dismiss.

1

Motion for Summary Judgment ("MSJ Opp."), Docket No. 22. Plaintiff CSI then filed its reply in support of the MSJ. *See* Reply in Support of Plaintiff CSI's Motion for Summary Judgment ("MSJ Reply"), Docket No. 26.[3]

### B. Factual Background

CSI makes the following allegations in the Complaint: CSI is the senior ecclesiastical management church of Scientology.[4] *Id.* ¶ 4. DeCrescenzo is a former staff member of CSI. *Id.* ¶ 5. Decrescenzo filed a lawsuit in state court on April 2, 2009, approximately five years after she ended her relationship with CSI. *Id.* ¶ 6. In that suit, she alleged six state law claims based on allegations from 1991-2004, and she later filed a first amended complaint in that matter on May 19, 2009. *Id.* She asserted various state law claims, alleging unfair business practices, minimum wage and maximum hour violations, and intentional infliction of emotional distress. *Id.* ¶ 8. These claims were based in actions taken by CSI, which are outlined at length in the Complaint. *Id.* ¶ 7.

In the FAC in state court, Decrescenzo added a new federal claim for human trafficking pursuant to 18 U.S.C. §§ 1589, 1593, 1595. *Id.* ¶ 8. CSI removed the action to federal court, with the case being assigned to Judge George H. King. *Id.* ¶ 10. CSI moved for dismissal of all of DeCrescenzo's causes of action in the FAC based on the theory they were time-barred because the statute of limitations had run on all claims from the date DeCrescenzo acknowledged such claims had accrued, meaning the date she left her position at CSI in 2004. *Id.* ¶ 11. DeCrescenzo argued that CSI was prevented from arguing the defense of statute of limitations due to the doctrine of equitable estoppel for reasons such as her belief that she waived her legal rights by signing releases that she alleged she was coerced into accepting. *Id.*

On November 5, 2009, Judge King held that Plaintiff's federal human trafficking claim was barred by the statute of limitations, rejecting Plaintiff's equitable estoppel argument. *Id.* ¶ 12. Judge King dismissed the federal claim with prejudice, but remanded the remaining state law claims to state court. *Id.* ¶ 13. In Superior Court, CSI demurred as to the remaining claims, arguing that Decrescenzo's state law claims were time-barred and that she was collaterally estopped by Judge King's ruling on the federal claim to assert otherwise. *Id.* ¶ 14. The Superior

---

[3] Pursuant to the stipulation of the parties, the present motions are heard on the papers and without oral argument. *See* Docket No. 33.

[4] The following factual allegations are also substantiated by court orders and documents filed with the courts over the last decade. *See generally* Pl.'s RJN; *see also* Def.'s RJN.

Court sustained the demurrer with leave to amend because DeCrescenzo failed to explain why tolling was appropriate; but the court did not discuss CSI's collateral estoppel argument in that opinion. *Id.* Plaintiff then filed a second amended complaint on February 2, 2010, adding another party to the litigation. *Id.* ¶ 15.

CSI again demurred to the second amended complaint on two grounds: "(1) all claims [including the state law claims] were barred by collateral estoppel, based on [the district court's] final judgment that CSI was not equitably estopped from invoking the statute of limitations as a defense to plaintiff's federal law claim; and (2) all claims were barred by the statute of limitations." *Id.* ¶ 16. The Superior Court sustained the demurrer without leave to amend based on the statute of limitations, but it rejected the collateral estoppel argument because under California law the federal court dismissal on statute of limitations grounds was not a decision on the merits. *Id.* ¶¶ 17-18.

DeCrescenzo appealed and the California Court of Appeal reversed and remanded to the Superior Court on June 24, 2011 ("the Court of Appeal's June 24, 2011 Decision") *Id.* ¶ 19; *see generally* Pl.'s RJN Ex. P. The Court of Appeal held that the "intimidation and threats of banishment and harassment, if true, may preclude defendants, in equity, from asserting the statute of limitations as a defense." Compl. ¶ 19. In addition, the Court of Appeal did not give preclusive effect to the district court's judgment because DeCrescenzo alleged additional facts in the second amended complaint in the state court action. *Id.* CSI petitioned for a rehearing, but it was denied. *Id.* ¶ 22. It then petitioned for review to the California Supreme Court, but the Court denied that petition as well. *Id.* ¶ 23.

The Superior Court bifurcated consideration of the lawsuit on the statute of limitations/equitable estoppel issue and the merits of Plaintiff's claims. *Id.* ¶ 24. CSI sought summary judgment in state court on both issues but summary judgment was denied in 2016. *Id.* The trial for the statute of limitations/equitable estoppel issue is scheduled for August 13, 2018. *Id.* ¶ 25.

## II.  MTD

### A.  Legal Standard

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient

facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.").

In deciding a 12(b)(6) motion, a court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court is not required to accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where a plaintiff facing a 12(b)(6) motion has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the motion should be denied. *Id.*; *Sylvia Landfield Trust v. City of Los Angeles*, 729 F.3d 1189, 1191 (9th Cir. 2013). But if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] . . . the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (citations omitted).

### B. Analysis of the MTD

Defendant moves to dismiss the Complaint on two grounds. First, she argues that the Court lacks the power to enjoin the pending state action because the preclusive effect of the California Court of Appeal's June 24, 2011 Decision takes this case outside of the relitigation exception to the Anti-Injunction Act ("AIA"). MTD at 15-21. Second, in the alternative, Defendant argues that if the Court has the power to enjoin the pending state court action, it should refrain from doing so "based on concerns of comity and federalism, strengthened by CSI's seven-year delay, CSI's failure to seek review by the United States Supreme Court, and the conclusion that the California Court of Appeal got it right." MTD at 21-27. The Court will address these arguments in turn.

### 1. *Whether the Court Has the Power to Enjoin the Pending State Court Action*

The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of

Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

The AIA limits the All Writs Act, and provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court *except* [1] as expressly authorized by [an] Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3] to protect or effectuate its judgments." 28 U.S.C. § 2283 (emphasis added). "The limitations expressed in the Anti–Injunction Act '[rest] on the fundamental constitutional independence of the States and their courts.'" *Sandpiper*, 428 F.3d at 842 (quoting *Atlantic Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287(1970)). The exceptions to the AIA "are narrow and are not to be enlarged by loose statutory construction." *Smith v. Bayer Corp.*, 564 U.S. 299 (2011) (internal quotation omitted). Rather, "[a]ny doubts as to the propriety of a federal injunction against state court proceedings [will] be resolved in favor of permitting the state courts to proceed," *Atlantic Coast Line*, 398 U.S. at 297, "which means [the Ninth Circuit] will uphold an injunction only on 'a strong and unequivocal showing' that such relief is necessary." *Sandpiper*, 428 F.3d at 842 (quoting *Bechtel Petroleum, Inc. v. Webster*, 796 F.2d 252, 253-54 (9th Cir. 1986)).

"The relitigation exception [to the AIA] was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court. It is founded in the well-recognized concepts of *res judicata* and collateral estoppel. The proper scope of the exception is perhaps best illustrated by this Court's decision in *Atlantic Coast Line* . . . ." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988). "[A]n essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court. Moreover, *Atlantic Coast Line* illustrates that this prerequisite is strict and narrow. The Court assessed the precise state of the record and what the earlier federal order *actually* said; it did not permit the District Court to render a *post hoc* judgment as to what the order was *intended* to say." *Id.* at 148 (emphasis in original).

"Deciding whether and how prior litigation has [a] preclusive effect is usually the bailiwick of the *second* court (here, the [state court]). So issuing an injunction under the relitigation exception is resorting to heavy artillery . . . an injunction can issue only if preclusion is clear beyond peradventure." *Smith*, 564 U.S. at 307. The Ninth Circuit aptly held that:

5

> It is true, as we have already pointed out, that a federal court may enjoin a state court action that is barred by the res judicata effect of the federal court's judgment. At the outset of such state litigation, the federal court may decide the res judicata issue and rule accordingly. *See id.* **The Supreme Court has held, however, that the situation is drastically changed when the state court has already ruled that the state action is not barred by the res judicata effect of the federal judgment.** *See Parsons Steel, Inc. v. First Ala. Bank,* 474 U.S. 518, 524, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986). That state court ruling itself may be binding on the federal court under the Full Faith and Credit Act, 28 U.S.C. § 1738. That Act provides that state court proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. Thus, the district court was required to give the California Court of Appeal's decision "the same preclusive effect it would have had in another court of the same State." *Parsons,* 474 U.S. at 525. This requirement applies "[e]ven if the state court mistakenly rejected respondents' claim of res judicata . . . ." *Id.*

*Brother Records, Inc. v. Jardine*, 432 F.3d 939, 943 (9th Cir. 2005) (emphasis added).

If there is a state court ruling, mistaken or otherwise, on an argument of res judicata, the next question to determine its preclusive effect on the district court "is whether the Court of Appeal's res judicata ruling is preclusive on other California courts under California law. The answer is not entirely clear." *Id.* In California, res judicata precludes judgment if "(1) the issues decided in the prior case were or could have been raised in the subsequent case; (2) *there was final judgment on the merits;* and (3) the party against whom the res judicata plea was asserted was a party in the prior case." *Id.* (citing *Bernhard v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 19 Cal.2d 807, 813, 122 P.2d 892 (1942)). The key question here is whether a Court of Appeal's decision to reverse and remand a case on res judicata grounds constitutes a final judgment.[5]

On one hand, as the Ninth Circuit in *Brother Records* points out, there are cases indicating that the Court of Appeal's June 24, 2011 decision is a final judgment binding upon other California courts for res judicata purposes. *See Rymer v. Hagler*, 211 Cal.App.3d 1171, 1180, 260 (1989) (explaining that collateral estoppel "requires only a final adjudication of the issue sought to be precluded in the second action") *see also Sandoval v. Super. Ct.*, 140 Cal.App.3d 932, 936 (1983) (adopting and quoting the Restatement (Second) of Judgments' rule that "for purposes of issue preclusion . . . 'final judgment' includes any prior adjudication of an

---

[5] This matter rests on whether the Court of Appeal's judgment was "final" such that it would be given preclusive effect with other state courts. The other two prongs of issue preclusion are clearer: CSI was a party to the relevant action. Also, whether Judge King's determination has a preclusive effect on the state court claims was decided in the Court of Appeal's res judicata determination. Pl.'s RJN Ex. P at 509-513.

issue in another action that is determined to be sufficiently firm to be accorded conclusive effect").

Since *Brother Records*, as Defendant has noted, a handful of California courts have applied the standard set forth in *Sandoval* and the Restatement, allowing for more flexibility in the term "final judgment." In *Border Bus. Park, Inc. v. City of San Diego*, 142 Cal. App. 4th 1538, 1565-66 (2006), the California Court of Appeal held that an order sustaining a demurrer "[met] the criteria for a final judgment for purposes of issue preclusion" under *Sandoval*. There, no judgment was entered in the prior lawsuit, but the court still concluded that the order had a preclusive effect. *Id.* at 1564-65. Multiple courts have cited the holding in *Border Business Park*, which in turns rests on the holding in *Sandoval*. *See, e.g.*, *Blatty v. Warner Bros. Entm't*, No. CV 10-06611-SJO-(VBKx), 2011 WL 13217379, at *7 (C.D. Cal. Apr. 21, 2011) (weighing the "*Border Business Park* factors . . . in favor of issue preclusion" and holding that "[a]ssuming, *arguendo*, the 2003 State Court Order was not final, it would be deemed sufficiently firm to accord preclusive effect."); *see also South Sutter, LLC v. LJ Sutter Partners, L.P.*, 193 Cal. App. 4th 634, 663 (2011) (applying the *Border Business Park* factors and holding that "The determination was not tentative and the parties were fully heard. The court issued a formal order, supported by [a] reasoned opinion, that was subject to an appeal.").

On the other hand, there are cases indicating that the Court of Appeal's June 24, 2011 decision might not constitute final judgment for res judicata purposes under California law. *See Doudell v. Shoo*, 159 Cal. 448, 453, 114 P. 579 (1911) (noting that "[a] judgment is final 'when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined'" (citations omitted)); *see also People v. Scott*, 85 Cal.App.4th 905, 919 (2000) (holding that a decision is final when "no further judicial act remains to be done to end the litigation").

The Court agrees with Defendant that it should apply the "sufficiently firm standard" of *Sandoval* and the Restatement to determine finality.[6] Applying that standard as iterated in *Border Business Park*, the Court weighs the following factors to determine whether a prior adjudication is "sufficiently firm" to possess a preclusive effect: "(1) whether the decision was

---

[6] Plaintiff argues that *Sandoval* and the cases following it involved situations in which "*no further direct California appellate proceedings were possible, as a jurisdictional matter*." MTD Opp. at 21. Though the cases differ to some degree from the case at bar, the Court finds these cases persuasive to illustrate that California courts have adopted the *Sandoval* standard. Moreover, Plaintiff provides little case law to demonstrate California has adopted a more rigid standard. MTD Opp. at 18-22.

not avowedly tentative; (2) whether the parties were fully heard; (3) whether the court supported its decision with a reasoned opinion; and (4) whether the decision was subject to an appeal." *Border Business Park*, 142 Cal. App. 4th at 1565. The Court will address these factors in turn.

First, the Court of Appeal expressed no indication that its June 24, 2011 decision was "avowedly tentative." *See generally* Pl.'s RJN Ex. P. To the contrary, the order speaks with a tone of finality: "[the] judgment is reversed with direction to the trial court to vacate the order sustaining the demurrer to the second amended complaint without leave to amend and enter a new order overruling the demurrer to each count." *Id.* at 514. Second, the parties were fully heard. Third, the Court of Appeal supported its decision with an 18-page reasoned opinion. *Id.* at 497-514. The Court of Appeal specifically determined that "the federal judgment does not establish collateral estoppel," and it devoted approximately four pages to its reasoning. *Id.* at 509-513 (emphasis omitted and capitalization altered). Fourth, the decision was subject to an appeal, but those processes were substantially exhausted. CSI petitioned for a rehearing, but it was denied. *Id.* ¶ 22. It then petitioned for review to the California Supreme Court, but it was denied. *Id.* ¶ 23.

These factors weigh in favor of finding that the Court of Appeal's June 24, 2011 res judicata determination would be binding upon other California courts, and that the District Court must therefore give preclusive effect to that ruling. As a result, the Court does not have the power to enjoin the pending state action, as no exception to the AIA applies.

> 2. *Whether the Court Should Refrain from Enjoining the Pending State Court Action Despite Retaining Power to Do So*

Defendant argues that even if the Court is empowered to enjoin the pending state court action, it should refrain from doing so.[7] MTD at 21-27. Plaintiff rebuts, asserting that comity is a "two-way street" that state courts must also respect. MTD Opp. at 25.

It is within the Court's discretion to refrain from granting the requested injunction even if it has the power to do so. *Bechtel*, 796 F.2d at 253; *Quackenbush*, 121 F.3d at 1377. As the Ninth Circuit has held, "[i]n considering whether to exercise their power to enjoin state court proceedings under the relitigation exception of the Anti-Injunction Act, district courts must be guided by 'general principles of equity, comity, and federalism.'" *Merle Norman Cosmetics, Inc. v. Victa*, 936 F.2d 466, 468 (9th Cir. 1991) (quoting *Parson*, 474 U.S. at 526). Doubts as to

---

[7] The Court need not address this argument because it lacks the power to enjoin the state court action in this instance. Despite that, it will briefly address this issue.

8

this question should be resolved "in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Bechtel*, 796 F.2d at 253.

In *Brother Records*, the Ninth Circuit held that it was the principles of "equity, comity, and federalism" that gave the district court the rightful discretion to refrain from enjoining the pending state court action. 432 F.3d at 944. More specifically, it held that:

> [t]he Court of Appeal's decision on res judicata was sufficiently definitive that all three of these principles [were] satisfied by according great weight to that state court's ruling. The parties argued the res judicata issue before the state trial court and the Court of Appeal, and the latter court explicitly decided the issue, which was determinative of the entire appeal . . . . [O]nce the state court has considered and decided the state court issue, the affront of federal court intervention stripping the state court of power to continue is greatly magnified. . . . Therefore, regardless of whether the California Court of Appeal's decision was final for purposes of res judicata, the district court did not abuse its discretion in denying the injunction under the relitigation exception.

*Id.* (internal citation omitted).

This case bears striking similarities to *Brother Records*. Like in *Brother Records*, here the parties argued the collateral estoppel issue before the California Court of Appeal and the court explicitly decided the issue in approximately four pages of an 18-page reasoned opinion. Pl.'s RJN Ex. P at 509-513. It is also relevant, though not dispositive, that Plaintiff waited more than six years to seek an injunction in this Court based on the allegedly erroneous June 24, 2011 Court of Appeal's decision. *See Bailey v. State Farm Fire & Cas. Co.*, 414 F.3d 1187, 1190-91 (10th Cir. 2005) (holding that the district court did not abuse its discretion in declining to issue an injunction; "[o]f significant import to the district court was Defendants' motion to dismiss the state case based on the district court's decision in this case denying class certification and the fact that Defendants continued litigating in the state court for over one year before it sought an injunction.").

At this point, the Court would decline to enjoin the pending state court action even if it had the power to do so. This decision falls squarely within the Court's discretion.[8]

---

[8] Though the foregoing reasons are sufficient for this Court to exercise its discretion in refusing to enjoin the pending state court action, the Court could potentially exercise its discretion on an additional ground. Judge King purposefully refrained from exercising supplemental jurisdiction as to the state law claims when he dismissed the federal human trafficking claim on statute of limitations grounds. Pl.'s RJN Ex. E at 122-26. At the time of dismissal, Judge King held: "[a]s this is the only claim over which we have original jurisdiction, we hereby exercise our discretion to decline to entertain the remaining state law claims under 28 U.S.C. § 1367(c)(3). The remaining state law claims are all hereby **REMANDED** to the court from whence they were removed." *Id.* at 126. This Court is reluctant to believe that Judge King's decision as to the federal claim has a preclusive effect on the remaining state law claims remanded to state court. If the issues were indeed identical, Judge King could have dismissed the

9

### III. MSJ

After Defendant moved to dismiss the Complaint, Plaintiff filed its motion for summary judgment. *See generally* MSJ. Because the Court will dismiss the Complaint for the above reasons, it need not entertain Plaintiff's now moot MSJ. Nonetheless, the Court notes that Plaintiff's MSJ is substantially similar to its opposition to the MTD, with large portions copy-pasted. *Id.*; *see also* MTD Opp.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss **WITH PREJUDICE**[9] and **DENIES** Plaintiff's motion for summary judgment as moot.

---

state law claims for the same reason as the federal claim then and there. Moreover, the California Court of Appeal made compelling arguments as to why collateral estoppel did not apply to bar the state law claims. Pl.'s RJN Ex. P at 509-13.

[9] Plaintiff could not cure the deficiencies in the Complaint with additional facts, so any amendments would be futile. *See Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile.").